IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOANNE SNIDE, for herself and all others similarly situated, | ) ) ) | CASE NO.: 1:11-CV-00244-LW |
| | ) | JUDGE LESLEY WELLS |
| Plaintiff, | ) ) | MAG. JUDGE GREG WHITE |
| vs. | ) ) | **REPLY TO DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S** |
| DISCOUNT DRUG MART, INC. , | ) ) ) ) ) ) | **MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION AND AUTHORIZATION OF ISSUANCE OF NOTICE TO PUTATIVE MEMBERS OF COLLECTIVE ACTION** |
| Defendant. | ) | **ON BEHALF OF PLAINTIFF SNIDE** |

**Introduction**

Plaintiff Joanne Snide, in her individual capacity and as a representative of all other similarly situated employees (hereafter collectively referred to as "Plaintiff Snide"), respectfully submits this Reply to Defendant Discount Drug Mart, Inc.'s (hereafter referred to as "Defendant DDM") Brief in Opposition to Motion for Conditional Certification of Collective Action and Authorization of Issuance of Notice to Putative Members of Collective Action. Plaintiff Snide submits that Conditional Certification of the proposed class of all hourly paid employees under the Fair Labor Standards Act (hereafter referred to as the "FLSA") is appropriate as Plaintiff Snide has far exceeded the "lenient" standard in evidencing via sworn affidavit testimony that Defendant DDM has a company-wide policy, practice and/or scheme of causing its hourly paid employees to work "off the clock" to avoid paying the legally required overtime wage. Plaintiff Snide has met this "lenient" burden by producing three separate affidavits and by offering sworn

1

testimony that not only did this unlawful policy, practice and/or scheme occur at one location of Defendant DDM, but also that managers in training at that particular location were trained on and actually carried out the unlawful practice during their training period before being assigned to other locations of Defendant DDM throughout the state of Ohio. Stated simply, the Court has been asked to conditionally certify a class of hourly paid employees who all fall under the supervision of management at Discount Drug Mart, Inc. throughout the state of Ohio who are similarly situated and no individualized analysis of each proposed member of the class is necessary.

First and foremost, Defendant DDM's Brief in Opposition did nothing more than try to "muddy the waters" by directing this Court to irrelevant case law from a great many federal courts outside of the U.S. Sixth Circuit Court of Appeals and the U.S. District Court for the Northern District of Ohio Eastern Division. As such, Plaintiff Snide now submits the below response to Defendant DDM's Brief in Opposition with the relevant and governing case law from the U.S. Sixth Circuit Court of Appeals and the U.S. District Court for the Northern District of Ohio Eastern Division. Plaintiff Snide submits that the Court need look no further than the recent case law from the U.S. District Court for the Northern District of Ohio Eastern Division in granting Plaintiff's Snide's motion. Specifically, in ruling upon Plaintiff Snide's motion, this Court should look to:

1. *Mehmedi v. La Dolce Vita Bistro, L.L.C.*, 2010 WL 4789579 (Copy attached as Plaintiff's Exhibit "A"), opinion entered by Judge Lesley Wells;

2. *McNelley v. Aldi*, Inc., 2009 WL 7630236 (Copy attached as Plaintiff's Exhibit "B"), opinion entered by Judge Patricia A. Gaughn;

3. *Jackson v. Papa John's USA, Inc.*, 2009 WL 385580 (Copy attached as Plaintiff's Exhibit "C"); opinion entered by Judge James S. Gwin; and

4. *Murton v. Measurecomp, L.L.C.*, 2008 WL 5725631 (Copy attached as Plaintiff's Exhibit "D"); opinion entered by Judge Sara Lioi.

## **Plaintiff Snide has clearly evidenced that Defendant DDM has a company-wide policy of management forcing its hourly employees to work "off the clock" in order to avoid paying the lawful overtime wage.**

Plaintiff Snide has already met her "lenient" burden of producing evidence that Defendant DDM both carried out an unlawful policy, practice and/or scheme of forcing its hourly employees to work "off the clock" in order to avoid having to pay overtime wages and that Defendant DDM trained its managers on said unlawful policy, practice and/or scheme. In Plaintiff Snide's motion, the affidavit testimony of three individuals was put forth.[1] On the issue of Defendant DDM training its managers to enforce the policy, practice and/or scheme of requiring hourly employees to work "off the clock" to avoid paying overtime wages, the Court already has the following sworn affidavit testimony before it:

1. During Plaintiff Snide's employment at Discount Drug Mart, Inc., several individuals worked at the store located in Wooster, Ohio as what Discount Drug Mart, Inc. referred to as "managers in training." (Affidavit of Joanne Snide dated March 24, 2011 at ¶ 22; Docket Entry #6). One individual who worked at the Discount Drug Mart, Inc.'s location in Wooster, Ohio as a "manager in training" was named Randy Moritz. (*Id.* at ¶ 23). During her employment at Discount Drug Mart, Inc., Randy Mortiz specifically requested that Plaintiff Snide work hours "off the clock." (*Id.* at ¶ 24). Plaintiff Snide also recalls working "off the clock" at Discount Drug Mart, Inc. located in Wooster, Ohio when other "managers in training" aside from Randy Moritz were present and in charge at the store. (*Id.* at ¶ 25).; and

---

[1] Defendant DDM's Brief in Opposition seems to all but concede that conditional certification is appropriate as to the Wooster store location. Therefore, Plaintiff Snide's Reply will focus primarily on the issue of manager training and the appropriateness of conditional certification as to all locations throughout the state of Ohio.

> 2. Former employee Linda Aiken witnessed several individuals working at the store located in Wooster, Ohio as what Discount Drug Mart, Inc. referred to as "managers in training." (Affidavit of Linda Aiken at ¶15; Docket Entry #6). Ms. Aiken stated that one such individual who worked at the Discount Drug Mart, Inc. location in Wooster, Ohio as a "manager in training" was named "Randy." (*Id.* at ¶ 16). In addition, she stated that this "Randy" specifically requested that she work hours "off the clock." (*Id.* at ¶ 17). Also, she recalls working "off the clock" at Discount Drug Mart, Inc. located in Wooster, Ohio when other "managers in training" aside from this "Randy" were present and in charge at the store. (*Id.* at ¶ 18).

Clearly, Plaintiff Snide has met her "lenient" burden at the initial certification stage. Defendant DDM's policy, practice and/or scheme of forcing its hourly employees to work "off the clock" to avoid paying overtime wages extends beyond simply one location. Defendant DDM is unable to contest the fact that there is sworn affidavit testimony that the unlawful practice, policy and/or scheme was not only enforced at one location, but also that managers who are now overseeing stores throughout the state of Ohio were trained on and carried out this unlawful policy, practice and/or scheme while at the Wooster location.[2] Of course, this issue is a moot point at the initial certification stage under the FLSA. As noted by Judge Patricia A. Gaughn in the *McNelley* case, the U.S. Sixth Circuit Court of Appeals has stated that the factual and employment settings of individual plaintiffs are generally considered in a final certification decision, not in the initial certification stage.[3] *McNelley* at *5. **As recently recognized by**

---

[2] Of course, Defendant DDM has attempted to create a question of fact on this issue, but such a tactic is futile at the initial certification stage as discussed later in this Reply.

[3] Also In the matter of the *McNelley* case, the U.S. District Court for the Northern District of Ohio acknowledged that the U.S. Sixth Circuit Court of Appeals has held that even at the final certification stage a showing of a unified policy of violations is not required.

4

**Judge Sara Lioi, it is <u>not</u> the role of the trial court to decide the case on the merits at the initial certification stage.** *Murton* at *2.

On the issue of the three affidavits filed by Plaintiff Snide, Defendant DDM has incorrectly tried to thwart conditional certification by submitting affidavits to create questions of fact. Such a tactic is of no avail in the U.S. District Court for the Northern District of Ohio at the initial certification stage because a trial court does <u>not</u> resolve factual disputes or make credibility determinations at the initial certification stage due to the lenient standard. *McNelley* at *2. As such, Defendant DDM's affidavits are absolutely meaningless at the current stage of this case. In addition, the affidavits should not even be considered by this Court at any point in the litigation as they were obtained by Defendant DDM's legal counsel misleading and coercing current employees. As such, Plaintiff Snide contends that all of the sworn affidavit testimony submitted by Defendant DDM should be stricken and not even considered by this Court at any time. This issue has already been thoroughly briefed by Plaintiff Snide in her Motion for Protective Order and for Sanctions and evidenced therein via the sworn affidavit of Ms. Erin Totten. (Docket Entry #14). As such, Plaintiff will not re-state the governing case law and affidavit testimony here for a second time.

As to the issue of whether all of the hourly paid employees of Defendant DDM are "similarly situated," Defendant DDM has put forth its faulty argument without citing this Court to the matter of *Mehmedi v. La Dolce Vita Bistro, L.L.C.*, 2010 WL 4789579, an opinion entered by this very Court just a few months ago. In the *Mehmedi* case, this Court stated that <u>after discovery</u> has been concluded a court should make a final determination as to whether the alleged members of the class are similarly situated and should be certified. *Mehmedi* at *1. At

the initial certification stage, only a "minimal showing" of "similarly situated" is required. *Id.* On this issue of a "minimal showing" of "similarly situated" employees, Plaintiff Snide has easily met this burden.

Defendant DDM's Brief in Opposition attempts to argue to this Court that the proposed opt-in class of hourly paid employees are not "similarly situated" for purposes of initial certification under the FLSA.[4] As stated above, the issue of "similarly situated" is best left for the Court to address after discovery has been completed and if and when Defendant DDM attempts to file motion at step two to decertify the class that was granted conditional certification. That said, Plaintiff Snide respectfully submits that all of the hourly employees are in fact "similarly situated" regardless of the specific job title Defendant DDM attempts to place upon each employee to confuse the issue.

Defendant DDM has already conceded in its Brief in Opposition that the hourly paid employees are supervised at each location by a manager employee who must be first trained. Defendant DDM's Brief in Opposition then stated the following to the Court, "In her brief, Plaintiff makes no attempt to establish the requisite similarity with the putative class members. That is, the Plaintiff has not, and cannot, demonstrate how a store clerk in Wooster is similarly situated to a key carrier in Westlake, much less how she is similarly situated to a truck driver working from the Warehouse, or a clerk working in the accounting department at the Corporate Office. (Defendant's Brief in Opposition at pg. 21).

---

[4] Plaintiff also wishes to point out that the Complaint and proposed opt-in notice address all hourly paid employees of Defendant. In its Brief in Opposition, Defendant Discount Drug Mart, Inc. seems to be speaking only to full-time hourly paid employees while ignoring the issue of its part-time hourly paid employees. By way of example, a part-time employee could easily be affected by the unlawful policy, practice and/or scheme in a fact scenario where a manager forces him/her to work fifty hours in a given week, while forcing the employee to work "off the clock" for twenty five of those hours and "crediting" the hours to the next week to avoid paying the legally required overtime wage.

In response to Defendant DDM's statement to the Court, Plaintiff Snide responds that evidence has been put forth to the Court via affidavit testimony that not only was the unlawful policy, practice and/or scheme of not paying overtime wages to hourly employees in effect at the location in Wooster, Ohio, but also evidence has been produced that managers in training at that location were not only trained on this unlawful policy but also carried out this unlawful policy at that location before being assigned as managers to other stores throughout the state of Ohio. Hence, all of the hourly paid employees throughout the state of Ohio have potentially been subjected to this unlawful policy, practice and/or scheme. Defendant DDM's argument that it has written policies against such actions is irrelevant at this stage and Plaintiff Snide has put forth substantial evidence that the managers in training did in fact carry out the unlawful policy. In short, the evidence not only proves that managers at the Wooster store location carried out this unlawful policy, practice and/or scheme, but also that other managers were trained to do it before being assigned to locations throughout the state of Ohio.

On the issue of "similarly situated," Plaintiff Snide would also like to address the fashion in which Defendant attempts to argue to the Court as to the specific job duties and assignments of its hourly employees at its various locations. In short, Defendant DDM has represented to this Court that its hourly employees at its various locations all have specific job titles and very specific job duties and responsibilities that flow from those job titles. Defendant DDM's Brief in Opposition stated:

1. The Plaintiff worked in a non-exempt position as a stocker. (Defendant's Brief in Opposition at pg. 10);

2. During her tenure, Aiken worked predominantly as a cashier (Defendant's Brief in Opposition at pg. 11); and

7

   3. Hookway works primarily in the photo area of the Wooster store, having assumed Aiken's responsibilities. (Defendant's Brief in Opposition at pg. 12);

First, Plaintiff Snide would like to point the Court's attention to the fact that while Defendant's Brief in Opposition is remarkably full of affidavits and affidavit citations as to most of the facts it represents to this Court, the three statements above refer the Court to no sworn testimony. Second, the Court should note that as to Ms. Aiken and Ms. Hookway, Defendant DDM's Brief in Opposition chose to qualify its statements as to their respective job titles with the words "predominantly" and "primarily," respectively.

Plaintiff Snide contends that this lack of citation to sworn testimony and use of qualifying language may have been done due to the fact that Defendant DDM's hourly employees at their store locations perform job responsibilities and duties that fluctuate on a regular basis regardless of their specific job title. Attached hereto is the Affidavit of Joanne Snide dated August 6, 2011. (Plaintiff's Exhibit "E"). Plaintiff Snide's sworn testimony stated the following:

1. During my employment at Discount Drug Mart, Inc., I did perform the job duties of a stocker (Affidavit of Joanne Snide dated March 24, 2011 at ¶9, attached as Plaintiff's Exhibit "E");

2. During my employment at Discount Drug Mart, Inc., I was assigned job responsibilities as a stocker (*Id.* at ¶ 10);

3. During my employment at Discount Drug Mart, Inc., I did perform the job duties of positions other than a stocker (*Id.* at ¶ 11);

4. During my employment at Discount Drug Mart, Inc., I was assigned job responsibilities of positions other than a stocker (*Id.* at ¶ 12);

5. During my employment at Discount Drug Mart, Inc., it was a common practice for management to assign the hourly employees to job responsibilities that would vary day by day regardless of the specific employee's officially stated job position (*Id.* at ¶ 13);

6. During my employment at Discount Drug Mart, Inc., it was a common practice for management to assign the hourly employees to job duties that would vary day by day regardless of the specific employee's officially stated job position (*Id.* at ¶ 14);

7. During my employment at Discount Drug Mart, Inc., I specifically recall being assigned the job duties and performing the job responsibilities of a cashier (*Id.* at ¶ 15);

8. During my employment at Discount Drug Mart, Inc., I specifically recall being assigned the job duties and performing the job responsibilities of a video counter employee (*Id.* at ¶ 16);

9. During my employment at Discount Drug Mart, Inc., I specifically recall being assigned the job duties and performing the job responsibilities of a stocker (*Id.* at ¶ 17);

10. During my employment at Discount Drug Mart, Inc., I specifically recall being assigned the job duties and performing the job responsibilities of an employee assigned to the "drug wall" (*Id.* at ¶ 18);

11. During my employment at Discount Drug Mart, Inc., I specifically recall being assigned the job duties and performing the job responsibilities of a key carrier on some occasions (*Id.* at ¶ 19); and

12. During my employment with Discount Drug Mart, Inc., I specifically recall other hourly employees at Discount Drug Mart, Inc. having job duties and job responsibilities that fluctuated from day to day based upon the direction of management. (*Id.* at ¶ 20).[5]

Based upon the sworn affidavit testimony of Plaintiff Snide, it is clear that Defendant DDM's attempt to argue that the hourly paid employees are not "similarly situated" because of their specific job titles is without merit. The evidence before the Court is that all of the hourly employees are subject to being wronged under the policy, practice and/or scheme of requiring them to work "off the clock" and no distinction can be made as to job duties and/or responsibilities based upon specific job titles. As such, all of the hourly employees are "similarly situated" under the "minimal showing" test utilized in deciding conditional certification.

It is also noteworthy that Defendant DDM cannot put forth any argument that the initial certification of this putative class will cause it to endure undue financial hardship and/or

---

[5] Again, Plaintiff Snide submits to this Court that a determination as to whether the hourly paid employees are "similarly situated" is a question left for the second step of the certification process, but has now submitted the second Affidavit of Joanne Snide nonetheless.

disruption of its business. Plaintiff Snide filed her Motion for Initial Certification on April 5, 2011. (Docket Entry #6). Defendant DDM then sought multiple leaves in which it requested additional time to investigate the allegations in the Complaint. Defendant DDM then filed its Brief in Opposition to Conditional Certification on August 1, 2011. (Docket Entry #15). Thus, Defendant DDM spent four months investigating the allegations in the Complaint. As is apparent by the large number of affidavits, Defendant DDM has already presumably expended considerable resources in investigating the allegations in the Complaint. Based upon the above, it is clear that any argument that Defendant DDM will be put to considerable additional expense in having to investigate a potential putative class through all of its operations is without merit as Defendant DDM has clearly already conducted an extremely thorough investigation.

On the issue of the number of affidavits before this Court, Defendant DDM cites to numerous federal court opinions from different jurisdictions while ignoring the fact the that the U.S. District Court for the Northern District of Ohio has already spoken on this issue at length. In the *McNelley* case, Judge Gaughn granted initial certification based upon only seven declarations and in doing so cited to the matters of:

1. *Jackson v. Papa John's USA, Inc.*, 2009 WL 385580, in which the U.S. District Court for the Northern District of Ohio Eastern Division granted conditional certification based upon the plaintiff's declaration and two additional declarations; and

2. *Murton v. Measurecomp, L.L.C.*, 2008 WL 5725631, in which the U.S. District Court for the Northern District of Ohio Eastern Division granted conditional certification based upon the plaintiff's declaration and one additional declaration.

As such, Plaintiff Snide's evidence in the form of three affidavits is clearly adequate for conditional certification under both the *McNelley* case and also this very Court's ruling in the *Mehmedi* matter.

Lastly, Plaintiff Snide is compelled to briefly address Defendant DDM's arguments in its Brief in Opposition which continually cite to Defendant DDM's written policies as to overtime and manager training. The written policies on these subjects are irrelevant to the current matter. As stated above, Plaintiff Snide has put forth ample evidence that even if the written policies of Defendant DDM are what the Brief in Opposition claims, they were not only not being followed but also that managers were being trained to not follow them. Defendant DDM's Brief in Opposition continually attempts to incorrectly point to these written policies as a defense in this matter. Such an argument is without foundation in either case law precedent or logic. After a thorough examination of case law from around the entire country, Plaintiff was unable to uncover a single case addressing the FLSA in which the factual background indicated that a defendant had a written policy that read, "Once an hourly paid employee reaches forty hours in a given work week, the manager should force them to then "work off the clock" for the remainder of the week to avoid paying overtime wages." On the contrary, cases involving hourly employees being forced to work "off the clock" always involve a written policy banning the practice while allegations exist that the written policy wasn't followed. In short, the Court has been presented with sworn affidavit testimony that managers and managers in training have in fact unlawfully carried out the policy, practice and/or scheme of having hourly employees "clock out" to avoid paying overtime wages regardless of what Defendant DDM's alleged written policies dictate.

**<u>Plaintiff Snide's Proposed Opt-In Notice is appropriate and valid as it is identical to an opt-in notice this very Court deemed appropriate in a FLSA matter not even a year ago.</u>**

Defendant DDM's Brief in Opposition goes to great length in attempting to erroneously claim that Plaintiff Snide's proposed opt-in notice provides insufficient notice and is deficient under the FLSA. In response to Defendant DDM's flawed argument, Plaintiff Snide again points the Court's attention to the matter of *Gerti Mehmedi v. La Dolce Vita Bistro, L.L.C.*, et al.,, which is <u>currently pending before this very Court</u> and bears U.S. District Court for the Northern District of Ohio Eastern Division case number 1:10-CV-01591-LW. Just as in the current matter, the *Mehmedi* case deals with a claim under the FLSA and alleged failures to pay overtime wages. In *Mehmedi*, the Court deemed a proposed notice of lawsuit as appropriate and authorized its use. A copy of this notice of lawsuit from the *Mehmedi* case is attached hereto as Plaintiff's Exhibit "F". Absent the specific factual recitations, such as the names of the parties, Plaintiff Snide hereby states to this Court that the proposed opt-in notice that Plaintiff Snide has submitted in the current matter is identical to the opt-in notice that this very Court accepted and authorized in the *Mehmedi* case not even a year ago. As such, Plaintiff Snide's proposed opt-in notice is appropriate under the FLSA in the current matter and Defendant DDM's claims that the opt-in notice requires additions and/or revisions before being authorized by this Court are clearly without merit.

**Conclusion**

In conclusion, Defendant DDM's Brief in Opposition is completely without merit. The Court has been presented with sworn affidavit testimony from three individuals who were subjected to Defendant DDM's policy, practice and/or scheme of forcing its hourly paid employees to work "off the clock" to avoid paying overtime wages. Under the applicable

"lenient standard" a "minimal showing" has been more than made by Plaintiff Snide. Also, Defendant DDM cannot attack Plaintiff Snide's evidence by trying to create questions of fact at the initial certification stage. In addition, sworn affidavit testimony has been produced that evidences that this unlawful policy, practice and/or scheme was part of manager training as to individuals who now serve as managers for Defendant DDM throughout the state of Ohio.

Respectfully submitted,

s/ Keith Hansbrough
Keith Hansbrough, Esq. (0072671)
Bret C. Perry, Esq. (0073488)
Donald J. Richardson, Esq. (0068786)
Bonezzi Switzer Murphy Polito & Hupp Co. L.P.A.
1300 East 9th Street, Suite 1950
Cleveland, Ohio 44114-1501
Phone: (216) 875-2074
Facsimile: (216) 875-1570
E-mail: Khansbrough@bsmph.com
Bperry@bsmph.com
Drichardson@bsmph.com

Attorneys for Plaintiff
Joanne Snide and all other similarly situated

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of August 2011, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. mail.  Parties may access this filing through the Court's system.

s/ Keith Hansbrough
Keith Hansbrough, Esq. (0072671)
Bret C. Perry, Esq. (0073488)
Donald J. Richardson, Esq. (0068786)
