**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **JOANNE SNIDE, for herself and all other similarly situated,** ) ) ) | **CASE NO. 1:11CV0244** |
| **Plaintiff,** ) ) ) | **JUDGE LESLEY WELLS** |
| v. ) ) ) | **MAGISTRATE JUDGE GREG WHITE** |
| **DISCOUNT DRUG MART, INC.,** ) ) ) | |
| **Defendant.** ) | **REPORT AND RECOMMENDATION** |

On August 9, 2011, this matter was referred pursuant to Local Rule 72.1, for supervision of all pretrial matters to include recommendations on any dispositve motions. (Doc. No. 17.) Pending before the Court are the following motions: (1) Motion for Class Certification under the Fair Labor Standards Act ("FLSA") (Doc. No. 6); (2) Motion for Expedited Discovery Toward the Issuance of Notice to Prospective Class Members (Doc. No. 7); (3) Motion for Protective Order and Sanctions (Doc. No. 14); (4) Motion to Strike Defendant's Filings #18 and #19 (Doc. No. 20.)

## I. Facts

On February 3, 2011, Plaintiff Joanne Snide ("Snide"), a former non-exempt, hourly employee of Defendant Discount Drug Mart ("Drug Mart"), filed this action alleging that Drug Mart violated 29 U.S.C. § 216(b) of the FLSA by failing to pay overtime at the required rate. Snide is pursuing this claim as a representative plaintiff on behalf of herself and other similarly situated employees. She also asserted class action claims under Ohio's Minimum Wage Standards Act.

Snide now moves for conditional certification as a collective action and for an order implementing a procedure to notify prospective opt-in plaintiffs of the suit, giving them an

opportunity to join. In support of her motion for conditional certification, Snide submits her Affidavit (Doc. No. 6-2) verifying the facts alleged in her Complaint as follows:

Snide was employed as a non-exempt, hourly employee at the Drug Mart located in Wooster, Ohio, from March, 2004, until November, 2010. (Doc. No. 6-2 at ¶¶ 5-8.) From 2008 to 2010 during her employment with Drug Mart, at the request of management, she frequently worked "off the clock," and she witnessed other hourly employees also "working off the clock." *Id*. at ¶¶ 9-13.

Specifically, her primary manager, Bruce Thomas, asked her to work "off the clock" so that overtime wages would not have to be paid. *Id.* at ¶¶ 14-15. Snide relates Thomas getting angry with her on at least one occasion for working over forty hours in a single week without clocking out.[1] *Id*. at ¶ 16.

Further, Snide states that Jeanne Frase, a supervisor at the Wooster Drug Mart, asked her to work "off the clock."[2] *Id*. at ¶ 20. Snide also claims that she was not paid time and half for the hours she worked in excess of forty hours per week. *Id*. at ¶ 21.

During Snide's employment at Drug Mart, managers for other stores were trained in Wooster. *Id*. at ¶ 22. Snide states that she worked "off the clock" at the request of "manager in training" Randy Moritz, as well as others. *Id* at ¶¶ 23-25.

In support of her Motion to conditionally certify a collective action, Snide submitted affidavits of two other non-exempt, hourly employees at the Wooster Drug Mart, Linda Aiken ("Aiken") and Rosemary Hookway ("Hookway").[3] (Doc. Nos. 6-3 at ¶¶ 5-7; 6-4 at ¶¶ 6-8.) Both claimed that they frequently worked "off the clock" at the request of management and both

---

[1] Snide recalls Thomas saying to her "you forgot to clock out" and that it was necessary for hourly employees to "work off the clock" if working in excess of forty hours in a single week to "keep corporate happy." *Id*. at ¶¶ 17, 18.

[2] The Complaint referred to this "policy, practice and/or custom" as "Banking Hours." (Doc. No. 1 at ¶ 15.)

[3] Aiken worked at the Wooster store from approximately 1998 until November, 2008, (Doc. No. 6-3 at ¶ 5), and Hookway from March, 2006 to the present. (Doc. No 6-4 at ¶ 6.)

2

witnessed other hourly employees doing the same. (Doc. Nos. 6-3 at ¶¶ 9-10; 6-4 at ¶¶ 10-11.) Aiken specifically recalls working "off the clock" at management's request during 2008. (Doc. No. 6-3. at ¶ 11.) Hookway recalls working "off the clock" at management's request from 2008 through 2011. (Doc. No. 6-4 at ¶¶ 12-15.) Neither employee was paid time and half for the hours that they worked in excess of forty hours in a week. (Doc. Nos. 6-3 at ¶ 14; Doc. No. 6-4 at ¶ 18.)

Aiken recalls a "manager in training" named "Randy" who requested that she work hours "off the clock" and she further recalls doing the same for other "managers in training." (Doc. No. 6-3 at ¶¶ 17-18.) Hookway's primary manager, Bruce Thomas, also requested her to work "off the clock" in order to avoid Drug Mart having to pay overtime wages. (Doc. No. 6-4 at ¶¶ 16-17.)

Snide is seeking conditional certification of a class described as follows:

> All current and former non-exempt employees employed by Defendant Discount Drug Mart, Inc. throughout the state of Ohio who, since February 3, 2008, have not been paid in accordance with provisions of the FLSA as a result of Defendant Discount Drug Mart, Inc.'s policies, practices and/or customs, including but not limited to, failure to pay overtime wages and failure to maintain records of hours worked and, as a result, have been damaged.

(Doc. Nos. 6 at 2; 6-1 at 5.)

Snide also moves for expedited discovery to determine the names and addresses of potential class members who are former or current non-exempt, hourly paid employees of Drug Mart in the State of Ohio from February 3, 2008, through the present. (Doc. No. 7.)

Lastly, Snide has filed a Motion for Protective Order and Sanctions. (Doc. No. 14.)

## II. Law & Analysis

### A. Conditional Certification of the Class

The FLSA directs that an employee or employees may bring an action "against any employer . . . in any Federal or State court of competent jurisdiction ... for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). However, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."

3

29 U.S.C. § 216(b). Specifically, § 216(b) states:

> Any employer who violates [the minimum wage or maximum hours provisions of this title] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages....

29 U.S.C. § 216(b).

Plaintiffs claiming a FLSA violation can bring a representative action for similarly situated persons if two requirements are met: "1) the plaintiffs must actually be 'similarly situated,' and 2) all plaintiffs must signal in writing their affirmative consent to participate in the action." *Comer v. Wal–Mart Stores, Inc.*, 454 F.3d 544, 545 (6th Cir. 2006) (citations omitted). An FLSA representative action is called a collective action and is different from a class action brought pursuant to Rule 23 of the Federal Rules of Civil Procedure, in that it utilizes an opt-in mechanism rather than the opt-out mechanism employed under Rule 23. *See id.*

In a FLSA collective action, the plaintiffs bear the burden at all times to demonstrate that the class is similarly situated. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996). Nevertheless, this burden is lighter than "that for joinder or for certification of a class action under Federal Rules of Civil Procedure 20(a) or 23, respectively." *Gonzales v. Hair Club for Men, Ltd., Inc.*, No. 6:06-cv-1762, 2007 WL 1079291, at *2 (M.D. Fla. Apr.9, 2007) (citing *Grayson*, 79 F.3d at 1096). The plaintiffs need only demonstrate that their positions are "similar, not identical" to the positions held by the potential plaintiffs. *Grayson*, 79 F.3d at 1096.

The court notes that "[s]ection 216 does not define 'similarly situated,'" *Wilks v. Pep Boys*, No. 3:02-0837, 2006 U.S. Dist. LEXIS 69537, at *8 (M.D. Tenn. Sept. 26, 2006), and that "even at the decertification stage, similarly situated does not mean identically situated."[4] *Id.* Recently, the Sixth Circuit commented on the issue: "[I]t is clear that plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien v.*

---

[4] Courts consider several factors at this stage, including: "(1) the disparate factual and employment settings of the individual plaintiffs, such as: a) job duties; b) geographic location; c) supervision; and d) salary; (2) the various defenses available to the defendant that appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Id.*

*Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 584 (6th Cir. 2009).  The *O'Brien* Court explained, however, that "[s]howing a 'unified policy' of violations is not required" to support certification of a collective action.  *Id.* at 584.  Rather, plaintiffs may also meet the similarly situated requirement if they demonstrate, at a minimum, that "their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct."  *Id.*

A collective action, serves several important policy goals.  First, the collective action "allows ... plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources."  *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989).  Second, "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity."  *Id.*

In an FLSA action, "[t]he district court may use its discretion to authorize notification of similarly situated employees to allow them to opt into the lawsuit."  *Hoffmann–La Roche*, 493 U.S. at 169.  Typically, courts have utilized a two-phase process in determining whether the proposed plaintiffs are similarly situated.  The first phase takes place at the beginning of discovery, and the second phase occurs after opt-in forms have been disbursed and returned and discovery has been completed.  *See Comer*, 454 F.3d at 547.

The instant case is at the first stage of certifying a representative class.  "The purpose of the first stage, or conditional certification, is to provide notice to potential plaintiffs and to present them with an opportunity to opt in."  *Lindberg v. UHS of Lakeside, LLC*, 761 F.Supp.2d 752, 757–58 (W.D. Tenn. 2011).  During the first stage, the standard for certification is "fairly lenient" and requires only "a modest factual showing" that the plaintiff is similarly situated to the other employees they seek to notify.  *See Comer*, 454 F.3d at 547.  While "lead plaintiffs bear the burden of showing that the opt-in plaintiffs are similarly situated to the lead plaintiffs," *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009), requests for conditional certification "typically result[ ] in 'conditional certification' of a representative class."  *Hipp v. Liberty Nat'l Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001) (*quoting Mooney v. Aramco Servs. Co.*, 54 F.3d 1297, 1204 (5th Cir. 1995)).

5

While the required level of proof is minimal and lenient at the first stage, the court should exercise caution in granting conditional certification, because the Sixth Circuit Appellate Court has held "that a conditional order approving notice to prospective co-plaintiffs in a suit under § 216(b) is not appealable." *See Albright v. Gen. Die Casters, Inc*., 2010 WL 6121689, at *1 (N.D. Ohio Jul. 14, 2010) (*quoting Comer*, 454 F.3d at 549). The court and the parties should be mindful, however, that certification at this first stage is "by no means final." *Id*. at 546 (citation omitted); *Steele v. SWS, LLC*, 2011 WL 3207962, *3 (E.D. Tenn. Jun. 24, 2011) (overruled on other grounds).

Once the district court grants conditional certification, potential plaintiffs receive notice informing them of their right to "opt-in" to the law suit. *Gonzales v. Hair Club for Men, Ltd. Inc.*, 2007 WL 1079291 at *3 (M.D. Fla. Apr. 9, 2007). After the completion of discovery, the defendant may initiate the second tier by moving for "decertification." *Id*. At this point, the court makes a factual inquiry as to whether the claimants are truly "similarly situated." *Id*. If they are not, the district court decertifies the group and dismisses the opt-in plaintiffs without prejudice. *Id.*

In the initial phase, the Court considers the following factors in making its determination of conditional certification: (1) whether potential plaintiffs were identified; (2) whether affidavits of potential plaintiffs were submitted; and, (3) whether evidence of a "widespread" discriminatory plan affecting those plaintiffs was maintained by the Defendant. *Mehmedi v. La Dolce Vita Bistro, LLC*, 1:10CV1591 (N.D. Ohio Nov. 17, 2010) (*citing Berger v. Cleveland Clinic Foundation*, 2007 WL 2902907 (N.D. Ohio Sept. 29, 2007)). Unsupported allegations that FLSA violations are widespread and that additional plaintiffs exist are insufficient to meet a plaintiff's burden. *Haynes v. Singer, Co., Inc*., 696 F.2d 884, 887 (11th Cir. 1983); *Harrison v. McDonald's Corp*., 411 F.Supp.2d 862 (S.D. Ohio 2005) (Hearsay statements of co-workers, which affiant allegedly overheard, were not admissible for purposes of determining whether co-workers were similarly situated in a motion to conditionally certify a collective action under FLSA.)

Lastly, given the lenient standard, a court does not resolve factual disputes or make

credibility determinations at this stage. *Monroe v. FTS USA, LLC*, 257 F.R.D. 634, 637 (W.D. Tenn. 2009). This lenient standard "typically results in conditional certification of a representative class." *Comer*, 454 F.3d at 547 (internal quotations and citations omitted).

Snide argues that she meets the factors necessary for a conditional certification. She has identified other potential plaintiffs, Aiken and Hookway, who have sworn that they worked "off the clock;" and, that they witnessed other non-exempt employees at the Wooster Drug Mart do the same. (Doc. No. 6-1 at 7.) Additionally, Snide argues that this was a widespread discriminatory policy by "managers in training" at the Wooster store who later went on to manage other stores throughout Ohio, implying that the "managers in training" were engaging in the same conduct at other stores.[5]

Drug Mart responds that conditional class certification is inappropriate for three reasons. First, Snide has presented no evidence of a widespread discriminatory plan. (Doc. No. 15 at 19-22.) It contends that Snide presents only meager evidence of several occurrences of an alleged practice in the Wooster Drug Mart store. *Id*. Second, it argues class certification is not appropriate because the putative class consists of hourly employees working in different locations, under different managers, doing different jobs. (Doc. No. 15 at 22-26.) Lastly, it argues that certification should be denied because affidavits from three employees – out of 1700 hourly employees – demonstrate weak evidence of company-wide violations. (Doc. No. 15 at 27-28.)

Snide meets the first two factors for conditional certification – she has identified other potential plaintiffs and they have testified that they also worked "off the clock" and were not paid for overtime in excess of forty hours. The third factor – evidence of widespread discriminatory plan – however, was not sufficiently presented. Affidavits presented by Snide indicate that there may be a discriminatory plan for employees to work "off the clock" and not be

---

[5]Snide also contends that "similarly situated" is not a factor in the court's determination until the second stage. (Doc. No. 16 at 4-5, fn. 5.) However, as caselaw demonstrates, courts must make an initial determination of "similarly situated" at the first stage. *See Comer*, 454 F.3d at 547.

7

paid overtime at the Wooster store, but there is no evidence that similar conduct occurred at other stores. Simply because "managers in training" at the Wooster Drug Mart subsequently moved to other stores, is not sufficient to demonstrate that the employees at the other stores were required to work "off the clock."

Accordingly the Court finds that Snide meets the factors for conditional certification at the Wooster store only. The collective class would, therefore, consist of the following:

> All current and former non-exempt employees employed by Defendant Discount Drug Mart, Inc. **at the Wooster, Ohio store** who, since February 3, 2008, have not been paid in accordance with provisions of the FLSA as a result of Defendant Discount Drug Mart, Inc.'s policies, practices and/or customs, including but not limited to, failure to pay overtime wages and failure to maintain records of hours worked and, as a result, have been damaged.

### B. Notice of Lawsuit and Consent to Participate

Courts may facilitate FLSA collective actions by authorizing notice of the suit to potential plaintiffs. *Hoffmann-La Roche, Inc*., 493 U.S. at 169; *Heaps v. Safelite Solutions, LLC*, 2011 WL 1325207, *7-10 (S.D. Ohio Apr. 5, 2011). The FLSA "grant[s] the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." *Hoffman-La Roche* at 170. The Court, therefore, will supervise notice in order to provide potential plaintiffs "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Id.*

Snide submits a copy of a suggested notice of lawsuit and consent to participate, requesting the Court to authorize their issuance to prospective members of the collection action. (Doc. Nos. 6-5, 6-6.) Drug Mart disputes the notice and consent, arguing they are deficient and unfair in several respects. (Doc. No. 15 at 28-33.) Specifically, it raises the following as deficiencies: (1) putative class members should be informed of potential costs of litigation if Drug Mart should prevail or if recovery is insufficient to pay costs and attorneys' fees (Doc. No. 15 at 29); (2) putative class members can be expected to incur expenses and lost time for travel and may be required to participate in depositions (Doc. No. 15 at 29-30); (3) the notice should

8

explain that Drug Mart denies liability (Doc. No. 15 at 30-31); (4) putative class members must be allowed to choose their own representation, *id*. at 31; (5) notice and consent form should set forth a basis for participation and require affirmation of same, *id* at 32-33; and, (6) the appropriate opt-in time is 45 days, not 60 days. *Id*. at 33.

Snide opposed Drug Mart's requests, arguing that this Court previously authorized a similar proposed notice of lawsuit and consent to participate. (Doc. No. 16 at 12.) Upon review of Snide's proposed notice and consent to participate, the following changes shall be made as set forth below and shall be resubmitted to the Court for review within fourteen (14) days of the District Court's ruling on this Report and Recommendation.

### 1. Potential Costs

Snide's proposed notice does not mention that opt-in plaintiffs could be liable for payment of Drug Mart's costs associated with the lawsuit if Drug Mart prevails. Drug Mart requests that the notice advise potential opt-in plaintiffs that they could be held liable for such costs. (Doc. No. 15 at 29.)

Courts have held that potential plaintiffs, in order to make an informed decision about whether to opt-in, should be made aware that there is a possibility that they may be liable for a defendant's costs of litigation. *Heaps*, *8 (issues of financial responsibility play into such determination); *see, e.g.*, *Baden-Winterwood v. Life Time Fitness*, 2006 WL 2225825, *1 (S.D. Ohio Aug. 2, 2006); *Dietrich v. Liberty Square, L.L.C.*, 230 F.R.D. 574, 580 (N.D. Iowa 2005); *Ponce v. Tim's Time, Inc.*, 2004 WL 1921038, at *3 (N.D. Ill. July 8, 2004), *Gjurovich v. Emmanuel's Marketplace, Inc*., 282 F.Supp.2d 101, 107 (S.D. N.Y. 2003). As such, the notice shall contain a statement that the opt-in plaintiffs could be liable for the payment of Drug Mart's costs if it prevails.

### 2. Participation in the Action

The proposed notice does not mention that opt-in plaintiffs may be required to participate in discovery. Drug Mart asserts that any notice should inform opt-in plaintiffs of any obligations regarding participation, including that depositions may be taken and expenses may be incurred. (Doc. No. 15 at 29-30.)

9

Courts have approved language describing possible discovery requirements of opt-in plaintiffs. *See Heaps*; *Baden-Winterwood*, 2006 WL 2225825 (approving proposed notice language, stating: "If you elect to join this lawsuit, you may also be required to provide information, give a deposition, and/or testify in court." ) Snide's notice must include similar language.

### 3. Drug Mart Denies Liability

Drug Mart suggests the proposed notice should include a statement that Drug Mart denies Snide's allegations. Drug Mart contends that the proposed notice assumes the very facts that Snide will be required to prove, *i.e.*, that Drug Mart has not complied with the FLSA. (Doc. No. 15 at 30.)

The United States Supreme Court has commented that, "trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Heaps (quoting Hoffmann-La Roche*, 493 U.S. at 174.) The purpose of the notice is to provide potential plaintiffs with a neutral discussion of the nature of the action. *Id.* Courts frequently approve and even require that the notice include a statement that the defendant denies the allegations and complied with the FLSA in good faith. *Id.; see, e.g., Baden-Winterwood*, 2006 WL 2225825; *Adams v. Inter-Con Security Systems, Inc.*, 242 F.R.D. 530, 541 (N.D. Cal. 2007); *Belcher v. Shoney's, Inc.*, 927 F.Supp. 249, 253 (M.D. Tenn. 1996); *Belt v. Emcare, Inc.*, 299 F. Supp.2d 664, 671 (E.D. Tenn. 2003). Plaintiff's notice, therefore, must include language stating that Drug Mart's denies the allegations and contends that it complied with the FLSA in good faith.

### 4. Right to Choose Counsel

Snide's proposed notice does not refer to the potential plaintiffs' right to be represented by counsel of their own choosing.

Informing potential plaintiffs of their right to choose their own counsel is an appropriate element in a notice. *Heaps, see, e.g., Douglas v. GE Energy Reuter Stokes*, 2007 U.S. Dist. LEXIS 32449, at *17 (N.D. Ohio Apr. 30, 2007); *Gjurovich*, 282 F.Supp.2d at 107. Therefore, the notice shall contain a statement indicating that the opt-in plaintiffs are entitled to be represented by Snide's counsel or by counsel of his or her own choosing.

### 5. Notice and Consent to Participate Form Should Set Forth a Basis for Participation

Drug Mart argues that the proposed notice does not sufficiently explain which employees are eligible to join the collective action. (Doc. No. 15 at 32.) Drug Mart requests that either or both the notice and the Consent to Participate include a simple, clear affirmation that they meet the following criteria: "(1) I am an hourly employee; (2) Drug Mart has asked me to work 'off the clock' with the purpose of avoiding payments of overtime; and, (3) This request to work 'off the clock' occurred since February 3, 2009."[6] (Doc. No. 15 at 32-33.)

The Court finds that the proposed notice clearly states which employees are eligible to join the collective action. Although to be consistent with this Report and Recommendation, the notice should state that it is directed to Drug Mart employees at the Wooster store. Moreover, the consent to participate already requires the signature of opt-in plaintiffs.

### 6. Appropriate Opt-In Time Period is 45 Days

Snide's proposed notice gives putative class members sixty days to respond. Drug Mart suggests that a forty-five day opt-in period would be sufficient. (Doc. No. 15 at 33.) Drug Mart also suggests that the opt-in notice must be received within such forty-five-day time-frame.

Courts have previously determined a forty-five days opt-in period to be more efficient than a proposed sixty day period. *See Heaps*, * 9; *Baden-Winterwood*, *3 ("sixty (60) days is too long and would needlessly delay the litigation"). The notice, therefore, should include that the potential plaintiffs shall have forty-five days to return their consent form to opt-in. Specifically, the consent form shall be postmarked by the forty-fifth day in order to be included as a plaintiff in the case.

### C. Motion for Expedited Discovery

Snide requests the names and addresses of all potential class members. (Doc. No. 7.) Drug Mart filed no opposition. The Court recommends that this motion be granted consistent with the conditional certification as to the hourly employees of the Wooster Drug Mart.

---

[6]The correct date would be February 3, 2008.

11

### D.  Motion for Protective Order and Sanctions

On July 29, 2011, Snide, in her individual capacity and as a representative of all other similarly situated employees, requests the Court to enter a Protective Order barring Drug Mart from having any contact with potential putative class members regarding relevant issues.  She also seeks a court order sanctioning Drug Mart for its conduct in interviewing Wooster store employees.  Drug Mart opposed the Motion for a Protective Order.  (Doc. Nos. 18, 19.)  In response, Snide filed a Motion to Strike Defendant's opposition (Doc. No. 20), as well as a Reply Brief.  (Doc. No. 21.)  The Court hereby denies Snide's Motion to Strike as the Court relies on Drug Mart's opposition to rule on the Motion for a Protective Order.  (Doc. 20.)

Drug Mart set forth sworn testimony of Drug Mart's Chief Financial Officer Thomas McConnell and counsel Max Dehn, who, on July 1, 2011, interviewed eleven Wooster employees.  (McConnell Affid., Doc. No. 18-1, ¶ 2.)  The stated purpose of the interviews was to determine the facts relating to the alleged improper wage and hour practice.  *Id*. at ¶ 3.  As set forth by Drug Mart in its brief, the relevant facts regarding the interviews are as follows:

- *Introduction*.  McConnell introduced himself to each interviewee by name, and his position with Discount Drug Mart (CFO).  McConnell then introduced Dehn, explaining that Dehn was working as an attorney for the company.  McConnell then explained to the interviewees that he and Dehn were seeking information about wage and hour practices in the Wooster store to determine whether such practices were proper and lawful.

- *Substance*.  Each interviewee was asked:

    - if he/she had ever worked off the clock at the Wooster store;
    - if he/she was aware of any hourly employee working off the clock;
    - if he/she was aware that he/she was entitled to be paid for all hours worked and for time and one-half for all hours over forty (40) in one work week;
    - if he/she was aware of any practice similar to the "banking hours" practice alleged in the Plaintiff's complaint.

- *Other Discussion*.  Interviewees were told that the interview would be kept confidential, in large part so that interviewees would feel they could speak freely.  Additionally, the Plaintiff has submitted an affidavit from Rosemary Hookway, who still works at the Wooster store, and Discount Drug Mart sought to avoid any possibility of conduct that would adversely affect Ms. Hookway's position in the store.

- *Duration*.  Most of the interviews were between five and ten minutes in duration.  The interview of affiant Erin Totten was particularly brief, lasting five minutes or less.

12

(McConnell Affid., ¶¶ 8-14; Doc. No. 19 at 4-5.)

McConnell also stated under oath that he did not interview any other hourly employees beyond the Wooster Drug Mart, and, to the best of his knowledge, neither Mr. Dehn nor any other attorney conducted interviews of hourly employees beyond those taken on July 1, 2011. (Doc. No. 18-1 at ¶ 15.)

Snide presents sworn testimony of Erin Totten, a Drug Mart employee from the Wooster store, who stated under oath that Drug Mart's legal counsel intentionally misled her during the July 1, 2011, interview by stating that they were going to ask her questions regarding a "survey," without telling her there was a lawsuit pending or that her statements to them could potentially affect her rights. (Doc. No. 14-2, ¶¶ 13, 18, 22-23.) Snide argues that these statements establish that Drug Mart intentionally and maliciously engaged in conduct aimed at coercing and misleading her. (Doc. No. 14-2 at 2.)

A defendant employer may communicate with its employees prior to certification of a putative collective action brought under the FLSA. *See Jackson v. Papa John's USA, Inc.*, 2009 WL 1323039, Case No. 1:08cv2791 (N.D. Ohio Mar. 10, 2009); *Zwerin v. 533 Short North, LLC*, 2011 WL 2446622, Case No. 2:10cv488 (S.D. Ohio Jun. 15, 2011). The *Zwerin* Court set forth the relevant law as follows:

> [A] defendant does nothing wrong by communicating directly with someone who may become, but is not yet, a member of either a class for which certification is sought under Fed.R.Civ.P. 23 or an opt-in class under 29 U.S.C. § 216(b). *See, e.g., Longcrier v. HL–A Co., Inc.*, 595 F.Supp.2d 1218, 1225–26 (S.D. Ala.2008), *citing, inter alia, Parks v. Eastwood Ins. Services, Inc*., 235 F.Supp.2d 1082, 1085 (C.D. Cal. 2002). In a case involving a potential Rule 23 class, the Supreme Court, in *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981), held that Rule 23 gives the district court "both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." That duty and authority extends to orders restricting communications between counsel and potential class members—and in that case, it was plaintiffs' counsel who were instructed not to communicate with the potential class members—but such orders may not be issued routinely. Rather, the Court held that this kind of order may issue only "based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id*. at 101. Although the Court did not expressly consider the impact of the First Amendment in this context, it did observe that this type of order is a prior restraint on communications and that any court asked to issue such an order should give "attention to whether the restraint is justified by a likelihood of serious abuses." *Id.* at 104. These general principles have been applied to §

13

> 216(b) opt-in class actions as well. *See, e.g., Maddox v. Knowledge Learning Corp.*, 499 F.Supp .2d 1338 (N.D. Ga. 2007); *cf. Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989) (acknowledging the applicability of these concepts to an opt-in action brought under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq*.
>
> As a general matter, courts have expressed concerns with at least two types of communications which might be made to potential class members—those containing misrepresentations, and those which may discourage persons from opting into the class. *See Belt v. Emcare, Inc.*, 299 F.Supp.2d 664, 668 (E.D. Tex. 2003); *see also Dominguez v. Don Pedro Restaurant*, 2007 WL 1650289 (N.D. Ind. June 1, 2007). One example of the latter is threatening employees with possible financial harm if they choose to participate. *See, e.g., Hampton Hardware Inc. v. Cotter*, 156 F.R.D. 630, 631–32 (N.D.Tex.1994). However, regardless of the basis upon which relief is being sought, "[t]he party moving for a protective order must make two showings: (1) that a particular form of communication has occurred or is threatened to occur, and (2) that the particular form of communication at issue is abusive and threatens the proper functioning of the litigation." *Ojeda–Sanchez v. Bland Farms*, 600 F.Supp.2d 1373, 1378 (S.D.Ga.2009).

*Zwerin* at *2.

The employer's right to communicate with employees is also protected by the First Amendment. *Papa John's, citing Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981). Such communication is lawful absent evidence of "coercive, misleading, or improper" conduct. *Jackson; see also Belt v. Emcare, Inc.*, 299 F.Supp.2d 664, 667 (E.D. Tex. 2003) (collecting cases). In order to prohibit such communication, a plaintiff must demonstrate that the defendant "misrepresented facts about the lawsuit, discouraged participation in the suit, or undermined the class' confidence in, or cooperation with, class counsel." *Kerce v. West Telemarketing Corp.*, 575 F.Supp.2d 1354, 1366-1367 (S.D. Ga. 2008). Further the employer's communication is considered proper when it is not undertaken in order to foreclose the employees' right to later join the FLSA action. *Lewis v. The Huntington Natl Bank*, Case No. 11cv0058 (S.D. Ohio May 23, 2011).

This Court will not presume that Drug Mart's communication with employees was coercive based solely on a single Affidavit. As the *Papa John's* Court noted:

> Defendants should and do have the right to gather facts on a plaintiff's claim through communication to putative opt-in class members if the communication is fair. A defendant's preconditional-certification investigation, if it is fair, benefits both the parties and a court. After communicating with putative opt-in class members to gather facts on the plaintiff's claim, a defendant may agree that conditional certification is warranted. Additionally, well-informed briefs will

14

help lead a court to the correct decision on conditional certification . . . .

*Papa John's* at *5.

Drug Mart claims it conducted the interviews of the Wooster store employees as an investigation of the factual basis of Snide's claims. No statements or affidavits made by current or former hourly employees of the Wooster store were submitted. At this point, the Court can only conclude that Drug Mart's interviews were not coercive, misleading, or improper. Totten's affidavit does not state that she was misled regarding her opting-in as a plaintiff in a collective action or that she is being discriminated against as an employee of Drug Mart. The Court, therefore, denies Snide's Motion for a Protective Order and Sanctions, without prejudice. (Doc. No. 14.)

### III. Conclusion

For the foregoing reasons, the Court recommends that Snide's Motion for Conditional Certification be granted in part and denied in part, limiting the collective action to Wooster Store employees only.

Furthermore, the Notice of Lawsuit and Consent to Participate (Doc. Nos. 6-5, 6-6) as well as the Motion for Expedited Discovery (Doc. No. 7) are granted in part as discussed in Sections II(B) & (C). A revised Notice and Consent are to be submitted to the Court for review within fourteen (14) days of the District Court's ruling on the Report & Recommendation.

Lastly, Snide's Motion for Protective Order and Sanctions is denied without prejudice (Doc. No. 14) and Snide's Motion to Strike Defendant's Document Nos. 18 and 19 is hereby denied. (Doc. No. 20.)

s/ Greg White
United States Magistrate Judge

Date: October 7, 2011

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).** *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**

15