## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **JOANNE SNIDE**, *et al.*, | ) | **CASE NO. 1:11CV244** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE LESLEY WELLS** |
| | ) | |
| **v.** | ) | **MAGISTRATE JUDGE GREG WHITE** |
| | ) | |
| **DISCOUNT DRUG MART, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | **REPORT AND RECOMMENDATION** |

On October 3, 2013, this matter was referred pursuant to Local Rule 72.1 (Doc. No. 72), for consideration of the Plaintiffs' Application for Attorneys' Fees and Costs.  (Doc. No. 65). For the following reasons the Court recommends the Application be granted in part and denied in part.

### I.  Procedural Background

On February 3, 2011, Plaintiff Joanne Snide ("Snide") filed a Complaint against her former employer, Defendant Discount Drug Mart, Inc. ("Drug Mart"), alleging claims under the Fair Labor Standards Act ("FLSA") and the Ohio Minimum Fair Wage Standards Act ("OMFWSA").  (Doc. No. 1).  Snide alleged she had worked for Drug Mart's branch store located in Wooster, Ohio as a non-exempt employee for several years before her employment ceased in November 2010.  (Doc. No. 1 at ¶ 7.)  She claimed she regularly worked in excess of forty hours per week in the course of her employment without being paid overtime wages and, further, that Drug Mart failed to keep legally adequate records of her overtime hours.  (Doc. No. 1 at ¶¶ 13, 18.)  Snide pursued her FLSA and OMFWSA claims as a representative plaintiff on behalf of herself and other similarly situated employees both at the Wooster store and all other Drug Mart stores "throughout the State of Ohio."  (Doc. No. 1 at ¶¶ 19, 20.)

On April 5, 2011, Snide filed a Motion for Conditional Class Certification (Doc. No. 6), seeking to certify the following class:

> All current and former non-exempt employees employed by Defendant
> Discount Drug Mart, Inc. throughout the state of Ohio who, since February 3,
> 2008, have not been paid in accordance with the provisions of the FLSA as a
> result of Defendant Discount Drug Mart, Inc.'s policies, practices and/or
> customs, including but not limited to, failure to pay overtime wages and failure
> to maintain records of hours worked and, as a result, have been damaged.

(Doc. Nos. 6 at 2; 6-1 at 5.) The Motion was supported by an Affidavit from Snide and with

affidavits from two other employees or former employees, Linda Aiken and Rosemary

Hookway. (Doc. Nos. 6-3, 6-4.) In addition to class certification, the Motion sought an order

implementing a procedure to notify prospective opt-in plaintiffs. To this end, the Motion

included a proposed Class Notice and Consent to Participate form.

Plaintiff filed several additional motions as well. On April 5, 2011, she filed a Motion

for Leave to Conduct Expedited Discovery to determine the names and addresses of potential

class members. (Doc. No. 7.) Several months later, on July 29, 2011, she filed a Motion for

Protective Order and Sanctions, alleging Drug Mart's interviews of some Wooster store

employees were improper for various reasons, including that they were misleading, coercive, and

did not inform the employees of relevant facts and/or rights. (Doc. No. 14.) In this Motion,

Plaintiff requested the Court enter (1) a Protective Order barring Drug Mart from having any

contact with potential putative class members regarding the relevant issues; and, (2) an Order

sanctioning Drug Mart for its conduct. (Doc. No. 14.)

On August 1, 2011, Drug Mart filed a Brief in Opposition to Plaintiff's Motion for

Conditional Class Certification. (Doc. No. 15.) This Brief was supported by over sixty-five

affidavits from various Drug Mart employees. (Doc. No. 15-2 to 15-16, and 15-18 to 15-68.)

Drug Mart also filed a Brief in Opposition to Plaintiff's Motion for Protective Order and

Sanctions, as well as a separate Supplemental Opposition. (Doc. Nos. 18, 19.) Plaintiff moved

to strike Drug Mart's filings opposing her Motion for Protective Order and Sanctions. (Doc. No.

20.)

On October 7, 2011, this Court issued a Report and Recommendation addressing

Plaintiff's various motions. (Doc. No. 25.) First, the Report & Recommendation concluded

Plaintiff had failed to present evidence of a widespread discriminatory plan sufficient to support

2

certification of a *statewide* class.  (Doc. No. 25 at 7-8.)  Rather, the Court recommended

conditional certification of a class limited to the Wooster store only, as follows:

> All current and former non-exempt employees employed by Defendant
> Discount Drug Mart, Inc. **at the Wooster, Ohio store** who, since February 3,
> 2008, have not been paid in accordance with provisions of the FLSA as a result
> of Defendant Discount Drug Mart, Inc.'s policies, practices, and/or customs,
> including but not limited to, failure to pay overtime wages and failure to
> maintain records of hours worked and, as a result, have been damaged.

(Doc. No. 25 at 8) (emphasis in original).  Second, the Report & Recommendation concluded

that Snide's proposed notice of lawsuit and consent to participate required revision in several

key respects.  (Doc. No. 25 at 8-11.)  Third, the Court recommended Plaintiff's Motion for

Expedited Discovery be granted consistent with the conditional certification as to the hourly

employees of the Wooster store only.[1]  (Doc. No. 25 at 11.)  Finally, the Court recommended

Plaintiff's Motion for Protective Order and Sanctions be denied without prejudice, and her

Motion to Strike be denied.  (Doc. No. 25 at 12-15.)

Plaintiff filed Objections on October 21, 2011, which Drug Mart opposed.  (Doc. Nos.

26, 28.)  On February 8, 2012, the Report & Recommendation was adopted in all respects.

(Doc. No. 31.)

Shortly thereafter, the parties submitted a Joint Motion for Court Approval of Class

Notice, which was granted the same day.  (Doc. No. 39.)  Plaintiff's counsel subsequently sent

the Class Notice to all potential class members.  Three persons opted into the class: Rosemary

Hookway, Linda Aiken, and Jessica Anderson.  (Doc. Nos. 40, 41, 42.)  As a result, the class

consisted of a total of four class members, including Ms. Snide.  Discovery thereafter proceeded

in the form of written interrogatories, requests for admission, and requests for production of

documents.  No depositions were taken.  (Doc. No. 62 at 4-5.)

On October 10, 2012, the Court conducted a telephonic status conference and was

advised the parties had reached a settlement with regard to payments to the individual Plaintiffs.

(Doc. No. 59.)  The Court ordered counsel to file a Joint Motion for Approval of the Proposed

---

[1] Drug Mart did not oppose Snide's Motion for Expedited Discovery.

Settlement and directed that the issue of attorney fees would be separately briefed.  (Doc. No. 59.)  Pursuant to the Court's Order, on February 22, 2013, the parties filed a Joint Motion for Approval of Collective Action Settlement.  (Doc. No. 62.)  Therein, the parties represented that they had reached an agreement with respect to the "compensation element" of the instant action; i.e. the individual Plaintiffs' overtime compensation and recordkeeping claims.  (Doc. No. 62 at 5-7.)  The Joint Motion also indicated that Drug Mart agreed to pay reasonable attorney fees and costs, as determined by the Court through a separate "Attorney's Fees Procedure" which called for briefing and, at the Court's discretion, a hearing.  (Doc. No. 62 at 7-9.)

On February 27, 2013, the Court issued a Report & Recommendation that the parties' Joint Motion for Approval be granted.  (Doc. No. 63.)  This Report & Recommendation was adopted in full on March 20, 2013.  (Doc. No. 64.)

On July 31, 2013, pursuant to the "Attorneys' Fees Procedure" set forth in the Joint Motion for Approval, Plaintiff filed a "Sealed Motion for Attorney's Fees and Costs" seeking $195,180.00 in attorney fees and $2,987.04 in costs as of June 24, 2013.  (Doc. No. 65.)  Drug Mart filed a Brief in Opposition, and Plaintiff thereafter filed a Reply.  (Doc. Nos. 69, 71.)  In the Reply, Plaintiff noted that, as of October 2, 2013, counsel was requesting $211,140 in attorneys fees and $3,011.54 in costs.  (Doc. No. 71 at 1.)  Drug Mart filed a Motion for Leave to File Sur-Reply, which the Court granted on October 10, 2013.  (Doc. No. 73.)  Plaintiff subsequently objected, arguing that sur-replies were not contemplated by the parties' agreed-upon "Attorneys Fees Procedure."[2]  (Doc. No. 74.)

## II.  Law and Analysis

In their Application for Attorneys Fees and related briefing, Plaintiffs argue their requested award of  $211,140 in attorney fees and $3,011.54 in costs is reasonable and

---

[2]  Although the "Attorneys Fee Procedure" allows for a hearing if necessary, neither party has specifically requested one.  Indeed, Plaintiffs state in their Application that they "do not see the need to conduct such a hearing and cause the parties on both sides to incur even more legal fees."  (Doc. No. 65 at 1.)  Having carefully reviewed the briefs and attached exhibits, the Court agrees and finds a hearing is unnecessary to resolve the issues presented.

4

appropriate. They maintain their attorney, Keith Hansbrough, was required to spend 703.8 hours actively litigating this matter because Drug Mart decided to "fight the case and deny all liability for over two years." (Doc. No. 65 at 5.) While Mr. Hansbrough's current practice is primarily medical defense work at a rate of $200 per hour, he argues he should be compensated at $300 per hour as this is "what the U.S. District Court for the Northern District of Ohio currently values the work done on this matter as being worth in monetary terms." (Doc. No. 65 at 3.) In support of this requested award, Plaintiffs attach the affidavit of attorney Cathleen Bolek, who has practiced employment law since 1995. (Doc. No. 65-4.) Ms. Bolek avers that she reviewed Plaintiffs' Application for Fees and Costs and concluded that, "[i]n light of the vigorous defense and protracted history of this litigation, it is my opinion that the fees sought by Plaintiff's counsel are reasonable overall and consistent with the public policies behind the fee-shifting litigation." (Doc. No. 65-4 at ¶ 8.)

Drug Mart argues Plaintiffs' requested attorney fees are unreasonable and excessive in several respects. First, Drug Mart objects to the number of hours billed by Mr. Hansbrough as including (1) an unreasonable amount of time for legal research, including research relating to "learning the fundamentals of FLSA law;" (2) instances where counsel billed an excessive amount of time in a single day; (3) an unreasonable amount of travel time and time spent communicating with Plaintiff Snide; and, (4) time spent in adversarial litigation after "it was clear" the matter would be settled. (Doc. No. 69 at 10-17.) Next, Drug Mart argues Plaintiffs' requested rate of $300 per hour is excessive in light of the fact that the instant case was Mr. Hansbrough's first FLSA matter and he charges significantly less (i.e. $200 per hour) for legal work performed in his specialty area of medical defense.

In support of these arguments, Drug Mart relies on the affidavit of attorney Anthony Lazzaro, who specializes in FLSA law. (Doc. No. 69-3.) Mr. Lazzaro avers that "Plaintiffs' counsel's demand for fees is excessive and unreasonable with respect to the amount of hours that he billed, and with respect to the hourly rate that he seeks to charge." (Doc. No. 69-3 at ¶ 11.) Based on his review of Plaintiffs' counsel's billing records, Mr. Lazzaro opines that a total of 237.3 hours should be deducted as excessive. (Doc. No. 69-3 at ¶ 13.) He further states Mr.

5

Hansbrough's proposed rate of $300 per hour is unreasonable and should be under $200 in light of "the $200 per-hour rate that Plaintiffs' counsel charges for legal work within his expertise, the $155 per-hour rate charged by Max E. Dehn, the attorney . . . who billed the majority of hours on behalf of Discount Drug Mart, and the $200 per-hour rate charged by Michael C. Cohan, . . . who also billed a substantial amount of time in this matter."  (Doc. No. 69-3 at ¶ 15.)

Based on the above, Drug Mart argues the determination of a proper fee award should begin by multiplying 413.3 hours by $155 per hour, resulting in a lodestar fee of $64,061.50. (Doc. No. 69 at 21.)  Drug Mart further argues this amount should be reduced by 50% because of Plaintiffs' "limited success."  Specifically, Drug Mart maintains the total fee awarded should be discounted in light of the fact that Plaintiffs sought to certify a statewide class potentially composed of over 1700 employees and, instead, only succeeded in conditionally certifying a class limited to one store with four plaintiffs.  (Doc. No. 69 at 21-24.)  After taking this 50% reduction into account, Drug Mart argues Plaintiffs should be awarded no more than $32,030.75. (Doc. No. 69 at 24.)

The FLSA provides that "the court in such actions shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  *See* 29 U.S.C. § 216(b).  "An award of attorney's fees under FLSA § 216(b) is mandatory, but the amount awarded is within the discretion of the District Court."  *Farmer v. Ottawa County*,  2000 WL 420698 at * 7 (6th Cir. 2000) citing *United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 et al. v. G & M Roofing and Sheet Metal Co. Inc.*, 732 F.2d 495, 501 (6th Cir. 1984).  "Since the FLSA does not discuss what constitutes a reasonable attorney fee, determination of a reasonable fee must be reached through evaluation of a myriad of factors, all within the knowledge of trial court, examined in light of the congressional policy underlying the substantive portions of the statute providing for the award of fees."  *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994).

As the Sixth Circuit has explained, "[t]he primary concern in an attorney fee case is that the fee awarded be reasonable."  *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999).  A reasonable fee is "one that is 'adequate to attract competent counsel, but . . . [does] not produce

6

windfalls to attorneys.'" *Id*. (quoting *Blum v. Stenson*, 465U.S. 886, 897 (1984)). "The trial court's initial point of departure, when calculating a 'reasonable' attorney fee, should be the determination of the fee applicant's 'lodestar,' which is the proven number of hours reasonably expended on the case by an attorney, multiplied by his court-ascertained reasonable hourly rate." *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) and *Reed*, 179 F.3d at 471). *See also Waldo v. Consumers Energy Co.,* 726 F.3d 802, 821 (6th Cir. 2013); *Ellison v. Balinski*, 625 F.3d 953, 960 (6th Cir. 2010); *Moore v. Freeman*, 355 F.3d 558, 565 (6th Cir. 2004). The district court may then, within limits, adjust the "lodestar" to reflect relevant considerations peculiar to the subject litigation. *Reed*, 179 F.3d at 471-72. *See also Moore*, 355 F.3d at 565 (noting the lodestar amount "may then be adjusted upwards or downwards, as the district court finds necessary under the circumstances of the particular case").

In adjusting the "lodestar" to arrive at a reasonable fee award, a district court may consider the following factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and, (12) awards in similar cases. *See Adcock-Ladd*, 227 F.3d at 349 (citing *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 717-19 (5th Cir. 1974)). *See also Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989) (noting that "*Johnson*'s 'list of 12' . . . provides a useful catalog of the many factors to be considered in assessing the reasonableness of an award of attorney fees"); *Hensley*, 461 U.S. at 430 n. 3.

Of the factors noted above, both the Supreme Court and the Sixth Circuit have consistently recognized that the "result obtained" is a particularly important consideration in determining the reasonableness of an attorney fee award. In *Hensley*, the Supreme Court expressly noted that "[i]f . . . a plaintiff has achieved only partial or limited success, the product

7

of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley*, 461 U.S. at 436.  Acknowledging this, the Sixth Circuit has explained that "after determining the basic lodestar, the degree of success obtained is the most important factor in determining the reasonableness of a fee award." *Kentucky Restaurant Concepts, Inc. v. City of Louisville*, 2004 WL 2756966 at * 5 (6th Cir. Jan. 12, 2005).  *See also Waldo*, 726 F.3d at 823 (citing *Hensley*, stating that "[t]he Supreme Court has instructed that 'the most critical factor governing the reasonableness of a fee award 'is the degree of success obtained'"); *Adcock-Ladd*, 227 F.3d at 349 (noting that "[a] highly important *Johnson* factor is the result achieved"); *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 552 (6th Cir. 2008) ("An award based on the total number of hours reasonably expended on the litigation might, however, result in an excessive amount if the claimant has achieved only partial success"); *Farmer v. Ottawa County*, 2000 WL 420698 at * 7 (6th Cir. April 13, 2000) (in FLSA case, upholding district court's 33% reduction in attorney fee award in light of the "limited nature of Plaintiff's success").

Applying the above framework, the Court will first determine the appropriate "lodestar" and then consider whether a deduction is warranted under the circumstances presented.

### A.  Lodestar

Plaintiffs assert their attorney, Mr. Hansbrough, should be compensated at a rate of $300 per hour for 703.8 hours of work done on this matter, for a total of $211,140 in attorney fees.  To support their argument that the Court use a $300 hourly rate in its lodestar calculation, Plaintiffs rely on the affidavits of Mr. Hansbrough and employment attorney Cathleen Bolek. (Doc. Nos. 65-3, 65-4.)  In his Affidavit, Mr. Hansbrough avers that: (1) he has been licensed to practice law in Ohio since 2000; (2) his current practice is primarily medical defense work; (3) his current hourly rate is $200 per hour; (4) his legal practice "has been 99% civil defense work;" and, (5) "[a]side from the above captioned case, [he has] not served as legal counsel for a plaintiff in a case alleging violations of the Fair Labor Standards Act." (Doc. No. 65-3 at 1.)  He further avers that, based on his own review of "known fee petitions" submitted in employment cases in this District, "the average rate for Ohio attorneys with my years of experience performing work for

plaintiffs in cases brought under the Fair Labor Standards Act is $300 per hour or more."  (Doc. No. 65-3 at 2.)

In her Affidavit, Ms. Bolek avers she has practiced employment law since approximately 1995 and that, until January 2013, her rate was $350 per hour.  She states that, since that time, her regular hourly rate has been $400 per hour.  (Doc. No. 65-4 at 1-2.)  She further states she has reviewed Mr. Hansbrough's affidavit and, "[b]ased on [her] experience, knowledge of other attorneys' hourly rates, and review of known fee petitions submitted in employment claims in [this District] over the past five years and court decisions with regard thereto, it is [her] opinion that $300 per hour is reasonable for attorneys with similar experience representing plaintiffs in wage and hour litigation."  (Doc. No. 65-4 at 2.)

Drug Mart maintains Plaintiffs' requested fees are excessive, and argues the appropriate lodestar (prior to adjustments, as discussed below) is $64,061.50, which is based on an hourly rate of $155 multiplied by 413.3 hours.  In support of this argument, Drug Mart relies principally on the affidavit of Anthony Lazzaro.  (Doc. No. 69-3.)  Mr. Lazzaro, who has practiced employment law since 2004 and has considerable experience litigating FLSA matters, avers that "Plaintiffs' counsel's proposed hourly rate of $300 per hour is excessive in light of the fees charged by accomplished FLSA lawyers in Northeast Ohio."  (Doc. No. 69-3 at 3.)  He notes that his own rates ranged between $255 - $285 per hour during the time period of 2011 through 2013.  (Doc. No. 69-3 at 3.)  In addition, Mr. Lazzaro states that a reasonable rate for Plaintiffs' counsel "would be under $200 per hour," based on (1) the $200 per-hour rate that Plaintiffs' counsel charges for legal work within his expertise; (2) the $155 per-hour rate charged by defense counsel Max Dehn, "who billed the majority of hours on behalf of Discount Drug Mart," and, (3) the $200 per-hour rate charged by defense counsel Michael Cohan, "who also billed a substantial amount of time on this matter."[3]  (Doc. No. 69-3 at 3.)

In Reply, Plaintiffs strenuously maintain the Court should disregard Mr. Lazzaro's

---

[3]  Mr. Dehn and Mr. Cohan each submitted affidavits stating that their hourly rates in this matter were $155 per hour and $200 per hour, respectively.  (Doc. Nos. 69-1, 69-2.)

Affidavit because it "neglects to mention that he enters into fee arrangements where he has his clients agree that he is to receive either a set hourly rate or a percentage of the recovery, whichever is the larger amount." (Doc. No. 71 at 9.) Plaintiffs maintain this fee arrangement allows Lazzaro to "claim a low lodestar rate . . . that represents the minimum he can be paid on his other cases, not the average amount he gets compensated on his FLSA cases." *Id.* Accordingly, Plaintiffs argue Lazzaro's affidavit does not accurately inform the Court what a "fair lodestar rate" is in Northeast Ohio for a FLSA case that does not include a contingency-fee component. *Id.*

In addition, Plaintiffs direct this Court's attention to a 2009 FLSA case from this District, in which lodestar rates ranging between $225-$400 per hour were approved as reasonable. *See Murton v. MeasureComp LLC*., Case No. 1:07CV3127 (N.D. Ohio) (Lioi, J.) (Doc. No. 333 at 25.) Plaintiffs maintain this judgment constitutes evidence of the appropriate lodestar rate in the Northeast Ohio market and should be taken into consideration by this Court in determining a reasonable hourly rate herein.

A district court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney. *See Waldo,* 726 F.3d at 821; *Wayne v. Village of Sebring*, 36 F.3d 517, 533 (6th Cir. 1994). In making this determination, "courts use as a guideline the prevailing market rate, defined as the rate that lawyers of **comparable skill and experience** can reasonably expect to command within the venue of the court of record." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004) (emphasis added). *See also Waldo,* 726 F.3d at 821; *Adcock-Ladd*, 227 F.3d at 350. Or, as the Supreme Court has explained, "[t]o inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence - in addition to the attorney's own affidavits - that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984). *See also Villegas v. Metropolitan Gov't of Davidson County*, 2012 WL 4329235 at *11 (M.D. Tenn. Sept. 20, 2012) (noting that "[t]he lodestar method considers an attorney's experience and special knowledge").

The Court finds Plaintiffs' proposed hourly rate of $300 is excessive under the

10

circumstances presented herein.  Although Mr. Hansbrough has been licensed to practice law since 2000, he acknowledges in his Affidavit that the instant action is the first time he has served as legal counsel for a plaintiff in a FLSA case.  (Doc. No. 65-3 at 1.)  Moreover, Mr. Hansbrough's Affidavit does not clearly indicate or quantify any previous experience he may have in employment law, stating only that his "current practice is primarily medical defense" and his "legal practice has been 99% civil defense work."  (Doc. No. 65-3 at 1.)  In the Application, Plaintiffs appear to predicate Mr. Hansbrough's proposed $300 hourly rate on the assumption that his thirteen years of legal experience in "civil defense work" is comparable to that of attorneys in Northeast Ohio with the same years of experience in employment law.  The Court finds this reasoning to be faulty.  While the Court does not question Mr. Hansbrough's expertise in medical and other defense work, the proper analysis in determining a reasonable hourly rate in this case is to compare Mr. Hansbrough's requested hourly rate with that of  "lawyers of comparable skill and experience" in employment and FLSA litigation; i.e. lawyers in Northeast Ohio who, although experienced in other types of legal work, are relatively inexperienced in litigating FLSA cases.  The Court finds Mr. Hansbrough's Affidavit does not address this issue and is, therefore, of limited value in determining a reasonable hourly rate.

Plaintiffs' reliance on Ms. Bolek's affidavit is also unpersuasive.  While Ms. Bolek opines generally that "$300 per hour is reasonable for attorneys with similar experience representing plaintiffs in wage and hour litigation," the Court finds this opinion to be inconsistent with her own history of hourly rates.  As noted above, Ms. Bolek states she has practiced employment law since 1995 and that, until January 2013, her regular hourly rate was $350.  (Doc. No. 65-4 at 2.)  Thus, in 2011 and 2012 when Ms. Bolek had over fifteen years of experience specifically in the field of employment litigation, her regular hourly rate was $350.  The Court finds it difficult to reconcile this fact with her opinion that a $300 hourly rate for Mr. Hansbrough is reasonable given his apparently limited experience in employment law generally and FLSA law in particular.

For similar reasons, the Court finds Plaintiffs' reliance on the *Murton* case is misplaced.  In that case, the Court approved an attorney fee award of $160,000, based in part on hourly rates

11

ranging between $225 to $400.  *Murton*, Case No. 1:07CV3127 (N.D. Ohio) (Doc. No. 333 at 26.)  However, a review of the affidavits submitted in support of the Application for Attorneys Fees in that case reveals that the attorneys involved had extensive experience in employment and/or class action litigation.[4]  *Id.* at Doc. Nos. 329-1, 329-2, 329-3.  Indeed, in a Memorandum Opinion regarding the fairness of the parties' Settlement Agreement, the Court expressly characterized counsel for plaintiffs and defendant as "experienced litigators in the area of FLSA class actions."  *Id*. at Doc. No. 333 at 13.  Here, as noted above, Mr. Hansbrough acknowledges that aside from the instant case, he has never before "served as legal counsel for a plaintiff in a case alleging violations of the [FLSA]" and, further, that his legal practice is primarily in medical defense.  (Doc. No. 65-3 at 1.)  In light of the disparity between the skill and experience levels between Mr. Hansbrough and plaintiffs' counsel in *Murton* in the specific area of FLSA litigation, the Court rejects Plaintiffs' argument that the hourly rates accepted as reasonable in *Murton* demonstrate that a $300 hourly rate is appropriate in the instant case.

Simply put, the Court finds Plaintiffs have failed to carry their burden of demonstrating that $300 per hour is the prevailing market rate for an attorney in Northeast Ohio with experience comparable to that of Mr. Hansbrough in the specific area of employment/FLSA litigation.  In the Court's judgment, an hourly rate of $200 is reasonable under the circumstances presented.  It is equivalent to Mr. Hansbrough's hourly rate for his area of expertise and is generally consistent with the rates historically charged by Mr. Lazzaro, i.e. a rate of $255- $265 per hour in 2011 with at least five years of FLSA litigation experience.  (Doc. No. 69-3 at 3.)  Accordingly, and in light of Plaintiffs' failure to direct this Court's attention to any evidence regarding hourly rates for attorneys with comparable experience to Mr. Hansbrough, the Court

---

[4] In *Murton,* plaintiff filed suit on his own behalf and all those similarly situated, asserting violations of the FLSA and OMFSWA.  Murton, Case No. 1:07CV3127 (N.D. Ohio) (Doc. No. 333 at 3.)  The Court conditionally certified the FLSA claim as a class action and, after notice was provided to over 1,000 potential members of the collective action, 253 individuals timely opted in.  *Id*.  Of the original members, 12 accepted offers of judgment, leaving 241 members in the class.  *Id*.  After engaging in substantial discovery and two rounds of mediation with a private mediator, the parties ultimately settled for a total of $360,000, of which $160,000 represented payment of attorney fees and costs.  *Id*. at 3-4.

finds $200 per hour is a reasonable rate for purposes of the lodestar calculation.

The lodestar calculation also includes a determination of "the number of hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 433. In this regard, the Supreme Court has noted that "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Id*. at 434. *See also Bronco's Entertainment Ltd v. Charter Township of Van Buren*, 2007 WL 2221406 at * (E.D. Mich. July 31, 2007) ("In determining the number of hours reasonably expended for purposes of calculating the lodestar, the district court should exclude excessive, redundant or otherwise unnecessary hours"). Moreover, "hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Hensley*, 461 U.S. at 434 (emphasis in original).

Here, Plaintiffs submitted detailed billing records indicating Mr. Hansbrough spent 703.8 hours actively litigating this matter. (Doc. No. 65-5.) They maintain this is a reasonable number of hours in light of the fact that Drug Mart was uncooperative in discovery, denied all liability for over two years, and refused to enter into meaningful settlement negotiations until nearly a year and half after the Complaint was filed. (Doc. No. 65 at 2-5.) Drug Mart argues this is an excessive number of hours because (among other things) it includes an unreasonable amount of time for (1) research regarding "the fundamentals of FLSA law," (2) travel time and time spent communicating with Ms. Snide; and, (3) adversarial litigation after "it was clear" the matter would settle. (Doc. No. 69 at 10-17.) Based on Mr. Lazzaro's review of Mr. Hansbrough's billing entries, Drug Mart argues 237.3 hours should be deducted as excessive, leaving 413.3 hours of billable time. (Doc. No. 69 at 21.) In their Reply Brief, Plaintiffs maintain Drug Mart's argument is disingenuous in light of the fact that "the time spent by Plaintiffs' counsel working on this case to win a settlement was almost the same amount of time that [Drug Mart's attorneys] billed Defendant Drug Mart to defend the case." (Doc. No. 71 at 1.)

The Court does have some concern regarding the number of hours expended, particularly with respect to the approximately 32 hours apparently spent researching basic FLSA law and

nearly 90 hours traveling to and from Wooster, Amherst and Orrville, Ohio.  However, given the protracted history of this litigation (which included both written discovery and motion practice), the Court will give Plaintiffs the benefit of the doubt and consider all 703.8 hours in the lodestar calculation.  Multiplying this figure times an hourly rate of $200, the Court finds the appropriate lodestar amount to be $140,760.

### B.    Degree of Success

This does not end the inquiry, however.  As noted above, both the Supreme Court and the Sixth Circuit have recognized that "[a]n award based on the total number of hours reasonably expended on the litigation might . . . result in an excessive amount if the claimant has achieved only partial success."  *Moore*, 515 F.3d at 552 (citing *Hensley*, 461 U.S. at 435).  Thus, it is well-established that, after determining the basic lodestar, district courts may consider the prevailing party's degree of success in determining the reasonableness of a fee award.  *See Hensley,* 461 U.S. at 434 (stating that, after determining the lodestar, "[t]here remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained').  *See also Kentucky Restaurant Concepts, Inc.*, 2004 WL 2756966 at * 5; *Adcock-Ladd*, 227 F.3d at 349; *Farmer*, 2000 WL 4207698 at * 7.

In this regard, the Sixth Circuit has explained that "where the plaintiff's claims for relief involve common facts or related legal theories, such that much of counsel's time will have been devoted generally to the litigation as a whole, the court 'should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'"  *Imwalle,* 515 F.3d at 552 (quoting *Hensley*, 461 U.S. at 434-435).  *See also Moore*, 355 F.3d at 565-566; *Kentucky Restaurants Concepts, Inc.*, 2004 WL 2756966 at * 5.  There is no "precise formula for making these determinations" and, under these circumstances, a district court "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award."  *Hensley*, 461 U.S. at 436-437.

While a fee award may be reduced because of a plaintiffs' limited success, the Sixth Circuit recently cautioned that such a reduction should be "'applied only in rare and exceptional cases where specific evidence in the record requires it.'"  *Waldo*, 726 F.3d at 822 (quoting *Isabel*

14

*v. City of Memphis*, 404 F.3d 404, 406 (6ᵗʰ Cir. 2005)).  In addition, "a court should not measure a plaintiff's success simply by using a ratio of successful claims to claims raised."  *See Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, 421 F.3d 417, 423 (6th Cir. 2005).  Indeed, the Sixth Circuit has "'repeatedly rejected mechanical reductions in fees based on the number of issues on which a plaintiff has prevailed.' " *Imwalle*, 515 F.3d at 531 (quoting *Deja Vu*, 421 F.3d at 423).  Rather, as stated above, in determining whether a fee award should be reduced because of a plaintiff's limited success, the court should focus on the overall result in relation to the hours expended.  *Hensley*, 461 U.S. at 435.

Here, Drug Mart argues the lodestar amount should be reduced by 50% because Plaintiffs achieved only limited success in light of what they set out to accomplish.  Specifically, Drug Mart maintains the total fee should be reduced because Plaintiffs sought to certify a statewide class potentially composed of over 1700 employees and, instead, succeeded in conditionally certifying a class limited to the Wooster store only.  Drug Mart further notes that only three individuals opted in, resulting in a total of four plaintiffs.  (Doc. No. 69 at 21-24.)  Plaintiffs, on the other hand, argue they achieved excellent results because they "were paid a settlement consisting of 100% of what they requested."[5]  (Doc. No. 71 at 2.)

Upon careful consideration, the Court finds a reduction of 50% in the lodestar amount is appropriate based on Plaintiffs' limited success.  As is evident from both the Complaint and the Motion for Class Certification, Plaintiffs pursued this action as a class action composed of "all current and former non-exempt employees employed by [Drug Mart] throughout the State of Ohio."  (Doc. No. 1 at ¶ 19.)  Drug Mart expended considerable resources defending against Plaintiffs' efforts to certify a statewide class, attaching affidavits from over sixty-five employees to its Brief in Opposition, including from supervisors, managers, sales clerks, bookkeepers, trainees, and other employees from Drug Mart stores around the State.  *See e.g.* Doc. Nos. 15-3 through 15-8, 15-18 through 15-20, 15-50, 15-51 through 15-53, and 15-58.  As noted *supra*, the

---

[5]  Under the terms of the settlement, Drug Mart agreed to pay a total of $15,247.91 to the four named Plaintiffs. (Doc. No. 65 at 1.)

15

Court found Plaintiffs had failed to present evidence of a widespread discriminatory plan sufficient to support certification of a statewide class, and limited the class to the Wooster store only.[6] (Doc. Nos. 25, 31.) As a result, the instant action was much smaller in scope than Plaintiffs had originally contemplated. Indeed, Drug Mart contends a statewide class would have potentially been composed of over 1700 individuals. As limited to the Wooster store only, however, the class ultimately was composed of only four plaintiffs.

The Court finds Plaintiffs' limited success in this regard warrants a 50% reduction in the total award. Circuit Courts of Appeals, including the Sixth Circuit, have upheld reductions in attorney fee awards in FLSA cases based on a plaintiff's limited or partial success under analogous circumstances. *See e.g. Barfield v. New York City Health and Hospitals Corp.*, 537 F.3d 132 (2nd Cir. 2008) (affirming 50% reduction of attorney fee award in FLSA case to account for plaintiff's failure to achieve collective action certification); *Farmer*, 2000 WL 420698 at * 7 (affirming 33% reduction of attorney fee award in FLSA case to account for "limited nature of Plaintiff's success").

Accordingly, the Court finds the lodestar amount of $140,760 should be reduced by 50% to account for Plaintiffs' limited success. Thus, the Court determines Plaintiffs are entitled to $70,380 in attorney fees. In addition, and in the absence of any objection from Drug Mart, the Court finds Plaintiffs are entitled to $3,011.54 in expenses.

### III. Conclusion

For the foregoing reasons, the Court recommends that Plaintiffs' Application for Attorney Fees and Costs (Doc. No. 65) be granted in part and denied in part as follows.

---

[6] In addition, the Court revised Plaintiffs' proposed Class Notice and Consent to Participate form to reflect several objections that had been raised by Drug Mart. (Doc. Nos. 25, 31.)

Plaintiffs' counsel is entitled to **$70,380** in attorney fees and **$3,011.54** in costs, for a total award of **$73,391.54.**


      s/ Greg White
United States Magistrate Judge

Date:   October 30, 2013

### OBJECTIONS

    **Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

17